## DEMPSTER MILL MFG. CO. v. HUMPHRIES. (No. 832.)

(Court of Civil Appeals of Texas. El Paso. April 4, 1918.)

1. CORPORATIONS ⊂⊃657(3)—FOREIGN CORPORATIONS—INTERSTATE COMMERCE.

Where defendant gave order for machinery to a third person, who without authorization transmitted it to the plaintiff, a corporation of another state, and after the machine arrived he agreed to and did give a new order "on the terms stipulated in the original order," there was a ratification of the interstate contract which permitted recovery by the foreign corporation, although it had received no permit to do business within the state.

2. COMMERCE ⊂⊃40(1) — "INTERSTATE COMMERCE"—SALE OF GOODS.

Assuming a single sale of a machine by a foreign corporation was made wholly within the state, it was, nevertheless, in interstate commerce.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

3. EVIDENCE ⊂⊃80(1)—FOREIGN STATES—PRESUMPTION.

In the absence of showing what was the law of the state wherein a note was given as to which the statute of limitations might have accrued, had there not been letters preventing the bar, the court must presume such law to be the same as the law of the state wherein the action is brought.

Appeal from Reeves County Court; Jas. F. Ross, Judge.

Action by the Dempster Mill Manufacturing Company against E. A. Humphries. Judgment for defendant, and plaintiff appeals. Reversed and judgment rendered.

See, also, 189 S. W. 1110.

Appellant, Dempster Mill Manufacturing Company, brought this suit to recover against appellee on two promissory notes in the sum of $464.76 each, payable at Toyah, Tex., with interest, less credits aggregating $305, and to foreclose an alleged chattel mortgage lien upon a Dempster irrigation pumping plant or machine, with its equipment, alleged to be of the value of $750. Appellee pleaded general demurrer, special exceptions, general denial, in abatement that appellant is a foreign corporation and had no permit to transact business in this state; pleaded that appellee was overreached, and deceived by certain representations of appellant in the execution of the order or contract for the plant, in that it was not agreed that he should give a mortgage on the plant. He further pleaded that a note given as additional security had become barred by limitation.

### Finding of Facts.

Appellant is incorporated under the laws of Nebraska, having its place of business at Beatrice, in said state. Appellee lives at Toyah, Tex.

On November 4, 1911, appellee, Humphries, was at Sentinel, Okl., and on said date, at the solicitation at that place of a salesman of appellant, signed an order to appellant for a pumping plant and its equipment, and directing that it be shipped to appellee at Toyah, Tex., from appellant's place of business in Nebraska; the order stating the terms upon which the payments were to be made. It was agreed between appellant's agent at Sentinel and appellee that the order for the pumping plant should not be delivered, but should be left with a third party at Sentinel, and should remain there in his possession until appellee would return to Toyah, Tex., and then if appellee should decide that he needed the pumping plant he would then notify said third party to send the order in to appellant at Beatrice, Neb. The said third party was not to send the order in until he was notified by appellee to do so. Appellee returned to Toyah, Tex., but never at any time notified said third party, or any other person, to send said order to appellant. Some time after appellee had returned to Toyah, he received a notice from appellant that the pumping plant had been shipped to him at Toyah from Beatrice. Appellee at once notified appellant of the arrival of the pumping plant, that he would not accept it, stating to appellant the conditions and circumstances of signing the order.

We have copied as a part of the statement of facts as much of appellant's evidence as we think necessary to show the subsequent transactions, consummating a sale of the plant, and the execution of the notes and mortgage sued upon:

"They [the company] then tried to get me to accept it [the plant], which I refused to do, but after considerable controversy between us I finally told the company that if they would send a man to Toyah, fully authorized to act for them, I would try to make a deal with them. So in a short while the company notified me that they would send Mr. W. H. Eck, who was fully authorized to act for the company. When Mr. Eck arrived at Toyah, we talked the matter over for some time. Mr. Eck and myself finally agreed that the machinery might be carried out to the well on my farm several miles from Toyah, and he agreed that if I would pay all expenses for hauling the machinery out to the well, and return the same and pay $150 for making the test, and take back the pumping plant in case it did not give satisfaction, or that if my well would not afford as much as 400 gallons of water per minute, then I was not to take the pumping plant. The understanding was that if the well should furnish 400 gallons of water per minute, and if the pumping plant and machinery were otherwise satisfactory, then I was to take it upon the same terms stipulated in the original order signed at Sentinel, Okl. So Eck took the pumping plant and machinery out of the freight depot at Toyah, and we hauled it out to my place, and he installed it; he made the test and the well would not furnish 400 gallons of water per minute, in fact, the pump would exhaust the well in a few minutes, and then it would not afford any water at all, so it was useless to me. Then Mr. Eck told me that perhaps the well needed cleaning out, and he said that if I would allow the pumping plant to remain there, and if I would have the well cleaned out, that he believed it would afford

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

400 gallons of water per minute. So he persuaded me to let the pumping plant and machinery remain there until I could have the well cleaned out, and he also said that if I would have the well dug a little deeper, it would be better, stating that he was an expert on wells. At the time I gave him the notes sued on, he stated that unless the machinery gave satisfaction he would cancel the notes and take back ·the plant, and that he would soon be back ·to work this territory. * * * I never did write to W. H. Eck, stating to him that he had promised to take back the machinery. I never did write to the company telling them that Eck agreed to take it back. I do not know whether or not I read the contract and mortgage shown me. Yes, it looks like the one I signed in Sentinel, Okl. * * * Yes, I suppose the pumping plant is the same plant that was described in the order I signed at Sentinel, Okl., on November 4, 1911. Yes, I have used the pumping plant to test two or three wells."

W. J. Eck testified:

"At the request of Dempster Mill Manufacturing Company, I came to Pecos to adjust this claim with Mr. Humphries. The pumping plant had been shipped from Beatrice, Neb., to E. A. ·Humphries, at Toyah, Tex., and he refused to take it, and I was sent by the company to adjust the matter with him."

Appellee admits the execution and delivery of the two notes, and the order for the pumping plant. In the order, the notes are mentioned as part consideration in connection with a note for $285 on a third party, given by appellee as additional collateral security. The order given for the plant retains title in appellant until full payment of the two notes.

The order for the pumping plant signed at Sentinel, Okl., and the order signed at Toyah, Tex. (the one sued upon), were both introduced in evidence, and are practically the same in terms. A number of letters from Humphries to the company, running through several years were introduced in evidence, in which he sent to the company payments on the two notes sued on, and repeatedly promised to pay the balance of the notes, but for reasons stated was not then prepared to do so, and requested extensions of time. It was admitted by appellant that it had not taken out a permit to transact business in this state.

J. A. Buck, of Crosbyton, for appellant. Ben Palmer and Harry MacTier, both of Pecos, for appellee.

WALTHALL, J. [1] The several letters of Humphries to the company clearly show a ratification of the contract of purchase of the pumping plant described in the order. We think it is quite clear also that, while Humphries refused to accept the plant under the first order, made at Sentinel, Okl., and the final consummation of the sale and delivery of the pumping plant, the execution of the notes and mortgage took place at Toyah, Tex., the transaction, as we construe it, was really an adjustment and conclusion of the sale commenced, but left undetermined by his refusal to accept the plant under his first order made at Sentinel, Okl. His agreement with Eck ·was that in the event he concluded to accept the plant he would "take it upon the same. terms stipulated in the original order," and did so. While the plant was then on his ranch near Toyah, he made the second order similar to the first one, thus, in effect, substituting the second order for the first.

[2] Had Humphries accepted the plant under the first order, there could be no question but that the transaction was interstate commerce. The trial court dismissed the case, evidently on the theory that the interstate character of the transaction terminated on Humphries' refusal to accept the plant after it reached Toyah, as he had the right to; his order ñot having been delivered by him to the company. But should we be in error in the interpretation of the facts as stated above, and should it be held that the transaction was not wholly an adjustment, and a consummation of the purchase of the plant commenced by the first order, and if it should be that the sale of the plant had its initiative on the arrival of Eck at Toyah, and that the sale of the plant was wholly made at Toyah, could it in that event be said that the transaction was not interstate commerce? We think not under the facts.

It is not shown that the company desired to transact business in this state other than to adjust the one transaction, or solicit business in this state, or established a general or special office in this state. Appellee has referred us to a number of authorities as sustaining his contention that the transaction was intrastate. We have very carefully read and analyzed each of the cases, and many others not referred to, and conclude that they do not so hold.

The case of Norton v. W. H. Thomas & Sons Co., 93 S. W. 711, in which a writ of error was denied by the Supreme Court, is more, we think, in point with the facts of this case than any we have examined. We think our conclusion is sustained also by the cases of Shaw Piano Co. v. Ford et al., 41 S. W. 198, and King v. Monitor Drill Co., 92 S. W. 1016. In the case of Miller et al. v. Goodman, 91 Tex. 41, 40 S. W. 718, the facts are somewhat similar to this case. In that case Judge Brown, speaking for the Supreme Court, said:

"It is a case of sale by a corporation, created ·by another state, of goods manufactured in that state, and shipped into the state of Texas. It matters not whether the goods were sold before they were shipped, or shipped to the state and then sold. It is equally interstate commerce" —and refers to Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128.

The one fact submitted by the trial court to the jury, Did Humphries, at Sentinel, Okl., buy from and instruct appellant to ship the pumping plant to him at Toyah? was undisputed. The suit was not based on that contract, and it was only an evidentiary fact in the case.

[3] Appellant alleges that it used due diligence to collect the note given as collateral security, was unable to do so, and in its

pleading tendered the note to appellee. Appellee alleges that the note is barred by limitation, but the several letters from the maker of the note to appellee, and read in evidence, would, in this state, prevent the bar of the statute. The maker of the note is a resident of Oklahoma, and the note is made payable in that state. We are not informed by the record of what the law of Oklahoma is, and must presume it to be the same as our own.

Appellee, in his brief, states that, if the transaction shown was interstate commerce, appellant had the right to maintain the suit, and we are of the opinion that it was. The ratification by appellee of the sale was alleged by appellant, and the undisputed evidence showing that it was, there is no undetermined fact remaining to be tried.

The case is reversed, and judgment is here rendered for appellant for the amount sued for, and for a foreclosure of its lien on the plant and its equipment. It is further ordered that appellant surrender to appellee the collateral note that it holds, signed by E. L. Harris.